I think we're getting a little bit of a feedback on your, maybe if you turn your speakers down a little bit it might help. Give me a moment. Is that better? It seems to be, yes. Can you still hear us? Okay, I can. Okay. Judge Kelly, they're ready. All right, Taluka, we're ready to hear from you. Okay, thank you. I apologize for the false start and members of the bench. If it pleases the court, my name is Maureen Lynn, and I'm from Scotts Bluff, which is a small town in western Nebraska. I represent Wendell Matthews. We ask this court to reverse the decision of the district granting this offensive motion for a qualified immunity summary judgment in this reckless investigation case. The reason why is because Detective Monte submitted a probable cause affidavit that contains false statements and flagrant omissions to justify his warrantless arrest of Mr. Matthews. Detective McNeil submitted this affidavit knowingly and with record disregard for Mr. Matthews' rights. It was not negligence. The rape of a child is a horrific event that leaves permanent emotional wounds. Being falsely accused of the rape of a child and at risk of a wrongful conviction for that is also a horrific event that leaves permanent emotional wounds. Monte McNeil arrested Wendell Matthews for sexual abuse of a child without a warrant, without any exigency or emergency that would prevent him from seeking a warrant first. The next day, McNeil prepared an affidavit for his arrest and gave it to the judge to justify his actions and to initiate prosecution of Mr. Matthews. In that affidavit, Mr. McNeil claimed that he knew to be false, and he excluded material facts that he knew were exculpatory. McNeil wrote that medical exams were conducted on Doe's anus and vagina, which showed signs of healed trauma. This was the most critical sentence of his affidavit. This is where Mr. McNeil affirmatively represented to the reviewing judge and prosecutor that there was forensic corroboration of Jane Doe's stories. It wasn't an honest mistake that was born from negligence. McNeil knew that his sentence was demonstrably false. He knew that there were zero positive findings for Jane Doe's vagina. No signs of healed trauma, no signs of anything in the vagina except for the presence of an intact septate hymen. He knew that the only potential findings for Jane Doe's anus were not to corroborate her stories, because a previous rectal exam on Jane Doe shortly after the last time she saw Mr. Matthews was totally negative. The minor was interviewed multiple times, is that correct? The minor was only interviewed once, Judge Kelly. She underwent a forensic interview at a child advocacy center called Bridge of Hope. She had some additional questions for the sexual assault nurse examiner, but there was no forensic interview. So at the time that he was arrested, you're saying that there was only one statement from the minor? Correct, Judge Kelly. Is one statement plus some corroborating details that I think that have been presented, some of the details, putting aside what you're saying was false, what you're representing is to be false information. Is the statements plus corroborating some of the more innocent details, is that enough for probable cause or at least arguable probable cause? The jury instruction was testimony of one witness is enough. The statement, of course, would be if it is reasonably reliable, and if there were corroboration of meaningful details, that would be enough to support probable cause. Corroboration was not of details that mattered. In fact, what matters more is that Mr. McNeil falsely misstated what the medical evidence said, which would have been pretty much the only evidence that corroborated the meat of her allegations. Her allegations were not that her mother was a cruel knight. The meat of her allegations were that Wendell Matthews raped her five to six times a week for a long period of time, and the medical exam contradicts that. It contradicted vaginal penetration. The only finding of possible healed trauma, which was what was written in the report, could not have come from Wendell Matthews because a rectal exam performed right after, not right after, but I think within a month after the last time she had seen him was negative. Then you throw in the other facts that Mr. McNeil withheld from the affidavit. Before we get there, I want to ask about one more fact, which is my understanding is that there were beliefs by the teachers that for a year or two before the actual forensic interview that Jane Doe was being abused. Does that provide some corroboration in terms of corroborating the statement she made during the forensic interview itself? There's a few reasons why I'm going to answer no to that one, Judge Strauss. The first one would be that none of that was placed in the affidavit. It was not submitted for the judge to determine whether it was corroboration of her claims. That's number one. Number two, the statement or the only concern by a teacher that expressed concerns of possible sexual abuse was actually investigated by Mr. McNeil himself. He concluded that Jane Doe was being asked leading questions, which led her to make the vague statements that she made. The only person she ever implicated in those kinds of statements was her father, saying that she was afraid of her dad, and no one ever investigated him. When she was questioned by counselors, she said nobody was hurting her. The only reference that she made to Mr. Matthews was that he was her buddy and that he slept on the couch. There was nothing in the statements to teachers that corroborated her statements at the Child Advocacy Center. I'll go back to the exculpatory evidence that was known to Mr. McNeil at the time that he put out of this affidavit. He omitted the fact that he knew that Jane Doe had a documented history of psychotic delusions and lies. He omitted the fact that he knew that Jane Doe had accused other individuals whom she named of also sexually assaulting her, and he personally investigated one of those accusations just months before she accused Mr. Matthews. I have a question about that. It's sort of an interesting question of when does impeachment material become exculpatory? It seems that generally speaking, the type of information you're providing is impeachment, but you have described it as exculpatory. Is there some sort of continuum there? Would you agree there are some impeachment aspects to what you're describing? There's impeachment aspects to it. I'm smiling a little bit because in my criminal defense practice, I defend sex crime cases. I understand, I believe, Judge Kelly, what the important question is. But the line between impeachment evidence and exculpatory evidence is not a clear one. In fact, it's exculpatory evidence that I'm seeking because it can be used for impeachment. The court had decided a case in 2014 called Williams v. City of Alexander that I think addressed your question, Judge Kelly. It's a case that provides some parallels for this case. A probable cause affidavit that both includes false statements but also excludes exculpatory-slash-impeachment context. Truthful context for the few statements that weren't false. And in that case, the Williams case, a police chief who had a vendetta against one of his officers pointed out an affidavit that his officer had taken blue emergency lights without permission and that he had cashed an extra payroll check that was given to him in error. Well, the officer had permission to use the blue lights in question, so that statement in the affidavit was false. It turned out that the officer realized that the error with the payroll check, realized it on his own and repaid it to the city. So it was misleading to omit that critical fact. And it turned out that the police chief who swore out the affidavit had a political vendetta against an opponent of him in a political race. And so that turned out, exculpatory impeachment, the line is not clear. But this court found that a reasonable official would understand that including false information in and omitting relevant information from an affidavit for arrest would constitute a violation of clearly established constitutional rights under Franks v. Delaware. And it denied the chief's motion for qualified immunity. Now, this court should reach the same result with Detective McNeil. Just like with the police chief in the Williams case, Detective McNeil both included false information in his post-arrest probable cause affidavit and he excluded relevant exculpatory information that the reviewing judge needed to review. And this is a case of negligence. This is not the sight of my eyes. Detective McNeil had time to deliberate as he was investigating a two-year-old accusation of any intervention or interference from anyone. Mr. Matthews did not even know this investigation was happening until Mr. McNeil knocked on his door. At every critical juncture, Mr. McNeil had the opportunity to identify right from wrong. He could have asked for a warrant before arresting with an accurate affidavit. He chose not to do so. He could have summoned a polygrapher when Mr. Matthews agreed to request. And instead, Mr. McNeil chose to go home. Counsel, I want to ask you a question about the specific claims. We have a substantive due process claim and the Fourth Amendment claims in a different category. But we have a case called Johnson v. McCarver from 2019 where we suggest that a substantive due process claim does not lie. When the underlying real claim is a Fourth Amendment claim. Do you have a response to that? I mean, I understand the Fourth Amendment claim may survive, but is there really a substantive due process claim here? I suspect I would get in big trouble if I answered that the case was wrong and I'm right. What I would say to the court with respect is that I'm focusing on our Fourth Amendment claim here, Your Honors. Thank you. Okay. In his affidavit, Mr. McNeil could have accurately stated the medical evidence and said that it corroborates the stories. He chose to not do that. He could have advised the judge that Jane Doe was his agency and that he had personally investigated Jane Doe's accusations against a different person. He chose to not do that. One of the more meaningful facts that goes to the scientry, when he wrote his report for the prosecutor and he referenced his own 2012 investigation on Jane Doe, he mentioned the findings from that 2012 rectal exam which were negative. He chose not to. Now, one of those might be an anomaly, and you could say the sun got in my eyes. It was negligence. It might be a coincidence, but that isn't even the entire list. With that many forks in the road, with Mr. McNeil consistently choosing the fork that takes him in the opposite direction from the evidence, that is intentional and it is a systematic pressure to implicate Mr. Matthews in the contrary evidence. His agency never did hold him accountable to Mr. Matthews, nor for another man whom he made the same mistakes with, as I referenced in the brief, Mr. Day. And so it's up to you to hold him accountable. If you don't, who will? For the rest of my time for rebuttal, thank you again for hearing my argument. Thank you. Ms. Scheer, ready to hear from you? Thank you, your honors. Can you hear me okay? Yes. Yeah, I can. I think we all can. Yes. May it please the court. My name is Carrie Scheer, and I represent defendants appellees, Investigator Monty McNeil, his supervisor, Lieutenant Rich Thompson, and the city of North Platte. Today, I will argue that the district court did not err in finding that no constitutional violation occurred, and that McNeil and Thompson are entitled to qualified immunity. I'll rely on the brief of appellees for all other issues. The district court did not err in finding that McNeil's arrest of Matthews did not give rise to a Fourth Amendment violation. The key inquiry in determining whether McNeil had probable cause is what he knew and when he knew it, and whether that information would justify a reasonable person in believing that Matthews had committed a crime. Between January 24, 2012, when the minor was 8 years old, and December 30, 2013, when the minor was 10 years old, McNeil received three separate reports involving the minor. The first report was made on January 24, 2012, when the minor's third grade teacher called the Department of Health and Human Services' child abuse hotline to report suspected sexual abuse. The teacher reported that the minor had started pooping her pants at the beginning of that school year, and she believed that the child's behaviors revealed red flags indicative of sexual abuse. McNeil was assigned the intake, and he talked to the minor's therapist at the time, as well as the minor's mother. After that, both the Department of Health and Human Services and McNeil found that there was no reason to investigate further because there were no sexualized behaviors present, there were no disclosures of sexual abuse at that point, and since Matthews had moved out in December, there were no males living in the home. But then a second report is made on September 10, 2013, after the minor tells a nurse that about a year before, another girl her age, that I will call Jane Doe 2, had touched her breasts, buttocks, and vagina. The nurse spoke to the minor's mother, who confirmed the minor's disclosure. She said that she knew about the touching involving her child and Jane Doe 2, but she did not report it because Jane Doe 2 had moved away. McNeil was notified of that report due to his prior investigation. At that point, he contacts the minor's mother to talk about the disclosure. He also contacts the minor's new counselor, Dr. Luke McConnell. But McNeil found there was no need to interview the minor at Bridge of Hope because Jane Doe 2 was no longer living in the area and could not be reached, no penetration was disclosed, and if the girls had been interviewed, they would have been given safety and boundary issues to follow. The case was then deemed closed. So at this point in time, we have one report from a teacher of suspected sexual abuse, and now we have a second report showing that the minor's engaging in sexualized behaviors with a peer. McNeil was then contacted a third time on December 30, 2013. On that day during a counseling session with Dr. McConnell, the minor disclosed that when she was in the third grade, Matthews had sexually assaulted her. After the disclosure, Dr. McConnell immediately called McNeil. Dr. McConnell also reported it to the hotline. McNeil then contacted the minor's mother to set up a forensic interview at Bridge of Hope. During the forensic interview, the minor disclosed that Matthews had sexually abused her, and her disclosure is very important because it's the primary basis of probable cause, so I do need to discuss it. When asked about the first time that it happened, the minor stated that it was on a Monday night when her mom went to play pool with a pool league. If I could just interrupt a bit, and I think the idea is what you're saying is, and I don't want to put words into your mouth, it's your argument, but that the minor made statements that were corroborated by sort of innocent facts. Is that fair? That is fair, yes. It seems to me that the crux of the concern here is what was not presented, that that was medical evidence, and I think Ms. Chalupka is representing this as just, it's just wrong. It just wasn't accurate information that was provided to the judge for this probable cause for the warrant. So how do you address this sort of omission of factual information and the assertion that the information that was included was, if not wrong, highly misleading? Well, okay, so there's two really big questions there. One pertains to the sentence in the affidavit that Matthews claims is misleading, and the second pertains to the Dr. Lopez medical report. So let's go back in time to the first time. It's in 2011, back when the first report, when the teacher says, I am concerned that this child is being sexually abused. Okay, that is in January of 2011, I believe. And the teacher says, I don't trust the mom. I think the mom knows what's going on, and she's not telling the truth, or she's not disclosing. And then during, in that same report, McNeil interviews the mother, and she says, oh, I took her to the doctor, it's fine. He never pulled that report. He never pulled the Dr. Lopez report. But he didn't hide the exam with Dr. Lopez. In his report to the prosecutor back in 2014, going forward, he highlighted the January 2012 investigation where the minor's mother claimed she had taken the minor to see Dr. Lopez. But if McNeil had pulled the Dr. Lopez report, it would not be exculpatory. It would have shown that the minor's pediatrician was not even told that the minor was, that there were suspicions that the minor had been subjected to sexual abuse. The pediatrician was not even informed. So when she did her medical examination, it was strictly to look for a cause of her incontinence, a current injury that was causing her to poop her pants. She was not looking for past evidence of medical sexual abuse because she wasn't told about it. So it wouldn't have exonerated Matthews in any way because the report didn't look for signs of past heel trauma related to sexual abuse because the pediatrician wasn't even told. Now going to the affidavit itself, the sentence in the affidavit is not wrong. It does not say that there was evidence of heel trauma to the vagina. It says medical exams were conducted of the minor's anus and vagina, which showed signs of heel trauma. So to say that the reference to medical exams showing signs of heel trauma is a reference to the anus and vagina showing, if anything, it's not as clear as it should be. But it is definitely not false. And he admitted during his deposition that he saw how it could be misleading when read in the way that Matthews is now reading it. But even if, for the sake of argument, even if that was deemed to be a false statement, the exam results were not necessary to a probable cause finding because he testified that his probable cause was based on the minor's disclosures in a forensic interview. Did I answer your question? Yes. So I guess going forward, looking at what the minor reported, because again, he's saying his probable cause is based on the interview. So during the interview, she reported that she'd been watching TV when Matthews pulled off her clothes, put her on the couch. Counsel, I will interrupt you at this point. I think, was it not your motion that you wanted to keep out as many of the details as possible? The court has read the record, so to the extent to make references, and if either one of my colleagues has a different view, they can speak up. But I would just caution you. Okay. Well, I did. I did move to seal it because I believe that that information of what her disclosure is is incredibly important. So with you having said that you've read it, that I would encourage you to read it and to read the transcript and to watch the video because she does make disclosures that a 10-year-old talking about something that happened when she was 8 years old would not know unless it's not information that a 10-year-old should readily have available.  It's graphic. It's detailed. Now, another thing that I want to discuss, but again, it touches on sensitive issues, but again, I did file the motion to seal because I wanted to keep these sensitive issues out of the public record, but I believe that it's essential to argue my case. And something that actually plaintiff has already discussed is the results of the sexual assault nurse examination, what those exams found. And those exams found that the child's anus easily dilated and that there was possible heel trauma to the child's anus. Those facts support McNeil's probable cause determination as well. One thing that she also argues is that the hymen itself is somehow negating, but McNeil testified that the minor's disclosures were consistent with Matthews having placed his penis on her labia without full penetration. He testified to that, that's in her disclosure. When asked about what occurred, that is what she stated. Nothing in her mental health history about which McNeil knew or otherwise made the minor an inherently unreliable witness and children who are victims of sexual abuse are perhaps more likely to show signs of mental health problems. So it would be troubling indeed if we were to find that minors were not credible witnesses to their own sexual abuse because of mental health history. Let me ask you this. There's no suggestion in the sexual assault exam that, I know you mentioned the hymen, but really there's no heel trauma or anything that would show vaginal penetration or anything like that. But most of the recounting in the interview concerns the vaginal penetration. So one might expect to see some evidence of that in the exam itself. The opposing counsel says that should have clued the officer in that perhaps the story was untrue. What's your response to that? Well, again, I feel like I have to talk about it, but the child said he put his penis on her, or he put his private area on her private area and moved up and down. And when asked where he put it, she pointed to a diagram of a child's labia, a picture of a child's labia, and said in that crack right there. So going back to the earlier observation you were making. Exactly. For the earlier state, yeah. So her disclosure doesn't necessarily require full penetration into the vagina. And that is what McNeil testified to during his deposition, that her disclosure could have been consistent with insertion into the labia itself. Let me ask you about the anal trauma too, which is, and maybe I'm making too much of this, but there were earlier reports that McNeil was aware of dealing with bowel problems and incontinence. Was there any connection ever made between the heel trauma that could have occurred and the bowel problems that presumably the police were aware of at the time that this report was made? I have not seen any connection made to that in the record. I do not know if that was the result of her physical trauma or if it was purely emotional damage or mental struggles that she was facing. So that is not in the record. I apologize. No, completely fine. Thank you. So McNeil did not make a knowingly false statement in the affidavit. There is absolutely no evidence that, although he testified that he could see how it would be misleading, there was no evidence that he knew that it was misleading at the time it was made. There's also no evidence that he omitted a truthful statement from his affidavit that would have negated probable cause. All he had to do is provide sufficient facts to support a finding. He didn't have to say everything that he knew in his probable cause affidavit and none of the facts that Matthew's claims McNeil omitted negate probable cause. In conclusion, this court should affirm the district court's order granting the defendant's motion for summary judgment as well as the district court's judgment dismissing Matthew's claims with prejudice. Unless you have any other questions, thank you very much. Thank you, Ms. Scheer. I appreciate your argument. Ms. Chalupa, I believe you have some. Thank you. A little bit. I appreciate that. I'll go right to Judge Strauss' questions. In her forensic interview, she claimed that she told her Uncle Boo that Mr. Matthews, quote, put his dick in me and that after the times that this would happen, she, in her words, said nonstop bleeding that she had vaginally for a week or two and that she would somehow sneak her mother's menstrual pads and bled nonstop. Claimed that after she was digitally penetrated in her rectum, she defecated and in her words, my poop was skin color. This was not on her vaginal area. She claimed it was in her vaginal area. To claim that the pediatrician was not informed that there was a suspicion of sexual abuse is pretty generous. The report is silent on that, and Mr. McNeil knew that whatever the pediatrician was told, he knew that this report said that there were no findings of the rectum, that she had examined Jane Doe's rectum and found nothing of any sort, trauma or any other cause. I would add that if probable cause was based on the disclosures only, which is what I think counsel just said, then why bother to say that the medical exams corroborate what Jane Doe said? Why bother with the medical exams at all if it was based only on the disclosures, especially when the medical exams were described in a way that is false? As to the disclosures, one other thing that I would note, I guess, is that this is a girl who also implicated five other alleged perpetrators  when her mother is not there. She stated to this sexual assault nurse examiner that she wants to steal her mother's vibrator and mentioned that they had a color-changing blanket with the word sex on it and a treasure chest filled with sand and a list of rapes. These are the immature confabulations of a child who has been exposed to sexual things at some point in her life, but with all of the references to other perpetrators, her mother's vibrator, and, in fact, her own agreement that Mr. Matthews was just her buddy who slept on the couch, there was not probable cause to believe that this was a reliable statement and the medical exams contradict it. Thank you. Thank you, Ms. Chalupka. Thank you, both counsel, and we appreciate you doing your best to honor the order that we entered in response to the motion to seal, and we will take this matter under advisement. Thank you very much. Thank you.